IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

DEMARIO SUMLAR                                                                                  PLAINTIFF

v.                                                                    CIVIL ACTION NO. 1:24-CV-223-SA-DAS

PRENTISS COUNTY, MISSISSIPPI, et al.                                                         DEFENDANTS

ORDER AND MEMORANDUM OPINION

On November 23, 2024, Demario Sumlar initiated this lawsuit by filing his Complaint [2] against Prentiss County, Sheriff Randy Tolar, Prentiss County Sheriff Department, Mississippi Department of Public Safety ("MDPS"), Deputy John Doe 1, Deputy John Doe 2, Patrolman John Doe 1, and John and Jane Does 3-10 (collectively referred to as "Defendant Officers").

There are multiple pending Motions [6, 14, 16], wherein the Defendants seek dismissal of the claims asserted against them. The Court, having considered the filings and the applicable authorities, is prepared to rule.

*Relevant Factual and Procedural Background*

On November 18, 2023, at approximately 10:30 P.M., Demario Sumlar was stopped at a traffic safety checkpoint near Booneville, Mississippi. An officer claimed that, upon initial contact, he noticed a bottle of liquor in the driver side door and the odor of marijuana.[1] The officer then directed Sumlar to pull onto the shoulder of the road.[2]

---

[1] The Complaint [2] does not name any officer and instead refers to them generally as "Defendant Officers." *See* [2] at p. 2. Though the Complaint [2] states that the identities of the officers involved in the subject checkpoint were unknown at the time the Complaint [2] was filed, to-date Sumlar has not amended his Complaint [2] to identify the officers, despite the fact that the Defendants identified the officers in their Answer. [4], Ex. 1. According to the Complaint [2], based upon belief the unidentified officers work for the Mississippi Department of Public Safety and the Prentiss County Sheriff's Department.

[2] The Court has reviewed and considered body cam footage from two members of law enforcement present at the traffic safety checkpoint. *See* [4], Ex. 3-4. The Court notes that the footage does not show the entirety of the events contained in the Complaint [2].

Once Sumlar pulled over, the officer commanded him to exit the vehicle. After conducting a weapons pat down, the officer directed Sumlar to stand at the rear of the car and put his hands on the trunk while he searched the vehicle. During the search, the officer found a small bag of marijuana tucked beneath the driver's seat.

The officer then walked behind Sumlar, directed him to put his hands behind his back, and informed him that "[he] was going in cuffs." [4], Ex. 3 at 2:26-2:28. Sumlar initially allowed the officer to handcuff his left wrist before pulling his right arm away and positioning it in front of his body. The officer again attempted to grab Sumlar's right arm, and after being unable to do so, initiated a takedown. While on the ground, Sumlar positioned his arms in front of himself as the officer attempted to secure his arms. A few seconds after the takedown, two additional officers who were working the checkpoint ran over to help restrain Sumlar and, in the process of assisting with the arrest, one officer placed a knee on the back Sumlar's neck. The officer removed his knee after Sumlar was handcuffed. Following the arrest, Sumlar was transported to Baptist Memorial Hospital and received treatment for a cut on his forehead that he sustained during the arrest.

Sumlar now brings claims against Prentiss County, the Prentiss County Sheriff's Department, the Mississippi Department of Public Safety, Sheriff Randy Tolar, in his official capacity, and various John Does in their official and individual capacities. The named Defendants seek dismissal of all claims.

*Analysis and Discussion*

As previously noted, Sumlar has asserted a variety of claims against multiple parties, including purported violations of his First and Fourth Amendment rights. The Court will address

each defendant separately beginning with MDPS and its Motion to Dismiss [6] and then turning to the remaining Defendants that seek summary judgment via separate Motions [14, 16].[3]

I. *Motion to Dismiss [6]*

MDPS brings a Motion to Dismiss [6] claiming it is entitled to sovereign immunity and that this Court therefore lacks subject matter jurisdiction over the claims asserted against it.

a. *Legal Standard*

A motion under Federal Rule of Civil Procedure 12(b)(1) asserts a lack of subject matter jurisdiction. In evaluating a Rule 12(b)(1) motion, a court may consider the complaint alone, undisputed facts in the record, and the court's resolution of disputed facts. *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). The allegations in the complaint are taken as true in determining whether a sufficient basis for jurisdiction exists. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980). The burden of establishing jurisdiction rests on the party asserting its existence. *Morris*, 852 F.3d at 419 (citing *Ramming*, 281 F.3d at 161). If subject matter jurisdiction is lacking, the case must be dismissed. *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011).

b. *Application*

MDPS contends it is an arm of the state and entitled to sovereign immunity under the Eleventh Amendment. The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

---

[3] The Court feels compelled to note that, although it must view the evidence in the light most favorable to Sumlar at this stage in the proceedings, Sumlar's failure to respond to the two Motions for Summary Judgment [14, 16], in addition to his failure to otherwise meaningfully participate in this litigation (as explained more fully hereinafter), has undoubtedly made the Court's task in this regard more difficult.

U.S. Const. amend. XI.

Although the Eleventh Amendment's language does not address suits against a State by its own citizens, the Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by [its] own citizens as well as citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974).

The Eleventh Amendment acts to bar an individual "from suing a state in federal court unless the state consents to suit or Congress has clearly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). The Eleventh Amendment bars both federal *and* state law claims against a state in federal court. *Yul Chu v. Miss. State Univ.*, 901 F. Supp. 2d 761, 771 (N.D. Miss. 2012) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119-21, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)) (emphasis added); *Kirk v. Miss. Dep't of Pub. Safety*, 2016 WL 10293382, at *4 (S.D. Miss. May 26, 2016) ("[T]he immunity provided by the Eleventh Amendment applies to both federal and state law claims.").

Importantly, sovereign immunity "protects not only states from suit in federal court, but also 'arms of the state.'" *U.S. Oil Recovery Site Potential Responsible Parties Group v. R.R. Comm'n of Tex.*, 898 F.3d 497, 501 (5th Cir. 2018) (quoting *Richards v. S. Univ.*, 118 F.3d 450, 452-54 (5th Cir. 1997)). Thus, "[t]he state need not be the named party in a federal lawsuit, for a state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Perez*, 307 F.3d at 326. It follows that the immunity "extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself." *Yul Chu*, 901. F. Supp. 2d at 771 (quoting *New Orleans Towing Ass'n, Inc. v. Foster*, 248 F.3d 1143 (5th Cir. 2012)) (additional citations omitted).

4

This Court and the District Court for the Southern District of Mississippi have consistently held that MDPS is an "arm of the state" for Eleventh Amendment purposes. *See Brownlee v. Miss. Dep't. of Pub. Safety*, 2020 WL 5517677, at *3 (N.D. Miss. Sept. 14, 2020) (collecting cases). In light of this well-settled authority and considering the fact that the Plaintiffs have made no argument to the contrary, the Court finds that MDPS is an "arm of the state" for Eleventh Amendment purposes. Consequently, MDPS is "entitled to Eleventh Amendment immunity unless Congress has validly abrogated the State's sovereign immunity, the State has waived sovereign immunity or consented to suit, or the *Ex parte Young* doctrine renders the State amenable to suit[.]" *Jones v. Tyson Foods, Inc.*, 971 F. Supp. 2d 671, 679 (N.D. Miss. 2013). These are the only exceptions to Eleventh Amendment immunity. *See id*.

Sumlar contends that his claims against MDPS fall "squarely within the *Ex parte Young* exception" because he seeks prospective relief including injunctive and declaratory relief. [10] at p. 5. This argument is a non-starter. In his Complaint [2], Sumlar only requests "actual damages; exemplary damages; pre-judgment interest; post judgment interest; court costs and attorney's fees and expenses, and all other relief." [2] at p. 14. Notably absent from his requested relief is any request for the prospective relief that *Ex parte Young* contemplates. *See Brownlee*, 2020 WL 5517677 at *3. The Complaint [2] does not allege an ongoing violation of federal law but, rather, only requests monetary damages for the events that occurred on November 18, 2023. Because Sumlar does not seek prospective relief, the *Ex Parte Young* doctrine is inapplicable. *Id.*

Since MDPS is an "arm of the state" for Eleventh Amendment purposes and the *Ex parte Young* exception does not apply, Sumlar's claims against MDPS cannot proceed in this forum.[4]

---

[4] Sumlar does not argue that any other sovereign immunity exception applies.

Those claims are hereby dismissed *without prejudice*.[5] The Court now turns to the pending summary judgment motions.

  II.   Motions for Summary Judgment [14, 16]

The Prentiss County Sheriff's Department, Prentiss County, and Sheriff Randy Tolar seek summary judgment as to the respective claims brought against them.

  a. Legal Standard

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240 at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Management of Louisiana, LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019)

---

[5] These claims are dismissed without prejudice in accordance with the Fifth Circuit's clear mandate that claims dismissed due to Eleventh Amendment immunity should be pursuant to Rule 12(b)(1) and without prejudice. *Brownlee*, 2020 WL 5517677 at *4 n.2 (citing *United States v. Texas Tech Univ.*, 171 F.3d 279, 286 (5th Cir. 1999)).

(quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalist arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

    b. Prentiss County Sheriff's Department

It is well established in Mississippi that a sheriff's department does not have a separate existence from their respective cities or counties and are thus not entities which may be sued. *See Jordan v. Edwards*, 2016 WL 3976622, at * 1 (N.D. Miss. June 17, 2016); *see also Brown v. Thompson*, 927 So. 2d 733, 736-37 (Miss. 2006); *Higginbotham v. City of Louisville, Miss.*, 2019 WL 4934949, at *2 (N.D. Miss. Oct. 7, 2019) ("Whether the Sheriff's Department has the capacity to be sued must be determined according to Mississippi law. FED. R. CIV. P. 17(b)(3). It has been clear for some time under Mississippi law that a sheriff's department is not a separate legal entity that has the capacity to be sued.") (citations omitted); *Wigginton v. Washington Cnty., Miss.*, 2013 WL 1124402, at *1 (N.D. Miss. Mar. 18, 2013) ("Because the Washington County Sheriff's Department does not enjoy a separate legal existence, apart from Washington County, the case against that defendant shall be dismissed.").

In light of this well-settled precedent, the Court does not find it necessary to address this issue further. The claims against the Prentiss County Sheriff's Department are hereby dismissed *with prejudice*.

7

c. *Sheriff Randy Tolar in his Official Capacity*

Next, the Court considers the claims against Sheriff Randy Tolar in his official capacity.[6] Unlike suits against officers in their personal capacities, suits brought against officers in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. N.Y.C. Dep't of Social Svcs*, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Estate of Manus v. Webster Cty., Miss.*, 2014 WL 1285946, at *2 (N.D. Miss. Mar. 31, 2014) (reversed in part on other grounds) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)). Therefore, "the dismissal of allegations against municipal officers in their official capacities is proper when the allegations duplicate claims against the governmental entity itself." *Id*. (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)).

Here, Sumlar makes no distinction between his claims against Prentiss County and his claims against Sheriff Tolar. In other words, his allegations against the Sheriff mirror his allegations against the County. Thus, Sumlar's official capacity claims are duplicative of his claims against Prentiss County and should be treated as claims against the County. *See Irvin v. Prentiss Cnty., Miss., et al.*, 2021 WL 277808, at *3 (N.D. Miss. Jan. 27, 2021). As a result, the official capacity claims against Sheriff Randy Tolar are hereby dismissed *with prejudice*.

d. *Defendant Officers*

Sumlar makes various claims against Defendant Officers, in their official and individual capacities. At this time, Sumlar has not amended his Complaint [2] to identify the Defendant

---

[6] To be clear, Sumlar only bring claims against Sheriff Randy Tolar in his official capacity.

8

Officers, and it would be improper for the Court to analyze claims against unnamed parties. *See generally Est. of Thornton v. Rankin Cnty., Miss.,* 2015 WL 1650237, at *4 n.6 (S.D. Miss. Apr. 14, 2015) (citing *Clark v. McMillin*, 932 F. Supp. 789, 794 (S.D. Miss. 1996)).

Generally speaking, a plaintiff has until the end of discovery to identify John Doe defendants. *Est. of Thornton,* 2015 WL 1650237 at *4 n.6; *see also Murphy v. Pierce*, 2024 WL 3845537, at *26 (E.D. Cal. Aug. 16, 2024) (collecting cases). However, Sumlar has seemingly ceased participating in this litigation as he has failed to even respond to the pending Motions for Summary Judgment [14, 16]. Furthermore, the identities of the Defendant Officers referenced in the Complaint [2] appear to be included in the Defendants' Answer [4], yet Sumlar has not sought leave to amend the Complaint [2] in order to substitute the John Doe defendants with those identified officers. *See* [4], Ex. 1.

Despite Sumlar's failure to timely seek leave to amend, the Court will provide him 14 days to file an amended complaint properly identifying the John Doe defendants. Should he fail to do so, the Court will dismiss his claims against them.

e. *Prentiss County*

The Court now turns to the claims against Prentiss County. Sumlar seeks to impose municipal liability against Prentiss County based upon a policy or custom and for failure to train and/or supervise. Before addressing each claim, the Court notes that while Prentiss County styled the filing as a Motion for Summary Judgment [14], the arguments articulated in its supporting Memorandum [15] ask for dismissal based on failure to state a claim. *See* [15] at p. 21-27. As such, the Court will apply the relevant 12(b)(6) standard.[7]

---

[7] Again, the Court notes that Sumlar has not responded to the Motion [14]. The Court notes the discrepancy in the Defendants' filings on its own accord.

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the pleading, on its face, must demonstrate that there exists a plausibility for entitlement to relief." *Young-Trezvant v. Lone Star Coll. Sys.*, No. 23-20551, 2024 WL 2794483, at *1 (5th Cir. May 31, 2024). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). The complaint's allegations "must be accepted as true and viewed in the light most favorable to the plaintiffs." *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021). But "conclusory allegations, unwarranted factual inferences, or legal conclusions" are not deemed true. *Aris-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

   1. *Municipal Liability*

Municipal liability under §1983 requires that a plaintiff prove three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy of custom." *Piotrowski v. City of Houston*, 237 F. 3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). An official policy may be "'[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority.'" *Okon v. Harris County Hospital District*, 426 Fed. App'x. 312, 316 (5th Cir. 2011), (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc), cert. denied, 472 U.S. 1016, 105 S. Ct. 3476, 87 L. Ed. 2d 612 (1985)). Alternatively, it may be a "'a persistent, widespread practice... which, although not authorized by

officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *G.M. ex rel. Lopez v. Shelton*, 595 F. App'x 262, 265 (5th Cir. 2014) (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)). A plaintiff must include a "description of a policy or custom and its relationship to the underlying constitutional violation. . . [and] cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997).

Here, Sumlar broadly alleges that "the County's formal and informal actions reflect a policy, practice, custom and procedure authorizing and allowing constitutional rights violations." [2] at p. 12. Sumlar also states that the "Defendant Officers… were acting pursuant to an official County and/or state policy[.]" *Id.* Sumlar lists eight conclusory "customs, practices, and policies" but fails to specify a policy statement, ordinance, regulation, decisions, or widespread practice that was the moving force of any alleged constitutional violations. *See*, *e.g.*, *Ducksworth v. Rook*, 2015 WL 737574, at *2 (S.D. Miss. Feb. 20, 2015) (finding Plaintiff failed to allege a "specific policy statement, ordinance, regulation or decision"); *Williams v. Anderson*, 2019 WL 138744, at *5 (N.D. Miss. Jan. 8, 2019); *Harmon v. City of Arlington, Texas*, 478 F. Supp. 561, 574 (N.D. Tx. 2020) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)).

Because Sumlar's description of a policy lacks *specific* facts and only makes conclusory allegations of a relationship to a constitutional violation, this claim fails.

2. *Failure to train and/or supervise*

The Complaint [2] also alleges that Prentiss County is liable for "failure to train a single officer [because] the policymakers [knew] about the pattern of unconstitutional misconduct and the Deputy's acts were so egregious that the County should have had clear warning that the particular deputy posed a danger to citizens." [2] at p. 13. To succeed on their failure to train and/or

11

supervise claim, Sumlar must allege that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; (3) the failure to train or supervise amounts to deliberate indifference." *Hernandez v. Desoto Cnty. Sheriff's Dept.*, 2012 WL 1036851, at *4 (N.D. Miss. Mar. 27, 2012) (citing *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375 381 (5th Cir. 2005)). In failure-to-train cases, "[d]efects in a particular training program must be specifically alleged." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017).

A municipality acts with "deliberate indifference" in training if the training's inadequacy is "obvious… and likely to result in violations of constitutional rights. *Id.* (citing *Benavides v. Cnty. Of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a *pattern of violence* and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'" *McCully*, 406 F.3d at 381 (emphasis added).

First, in support of his failure to train claim, Sumlar alleges:

> With respect to Defendant Officers, the need for additional or different training was necessary considering the circumstances of this incident. Defendant County and/or State knew that Defendant Officers were likely to engage in other acts of wrongful conduct, yet Defendant County and/or State continuously failed to discipline, supervise, or train Defendant Officers.

[2] at p. 13.

These allegations fall below the requisite pleading threshold. *See Hutchenson v. Dallas Cnty., Tx.*, 994 F.3d 477, 483 (5th Cir. 2021) (affirming district court's finding that assertion stating "[t]he fact that this incident occurred *at all* demonstrates the obvious need for Dallas County to provide its officer with additional or different training" was conclusory) (emphasis in

12

original). The bare assertion of a "need for additional or different training" is purely speculative and conclusory and insufficient to carry Sumlar's burden.

Second, Sumlar failed to demonstrate a prior pattern of constitutional rights violations by any officer.[8] In line with Fifth Circuit precedent, this Court finds the single incident of Sumlar's arrest to be insufficient to demonstrate deliberate indifference.[9] *McCully*, 406 F.3d at 382-83; *see, e.g., Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (holding a showing of deliberate indifference usually requires a plaintiff to "demonstrate a pattern of violations"); *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (holding that "proof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training"). Moreover, the Court reiterates, despite having the opportunity, Sumlar failed to allege any facts evidencing deliberate indifference and as a matter of law this claim fails.[10]

---

[8] Again, Sumlar has not even named the officers who committed the alleged violations.
[9] To be clear, the Court is not making any finding as to whether a constitutional violation occurred during Sumlar's arrest.
[10] Sumlar generally alleges claims "against Defendants for federal constitutional violations and state law personal injuries." [2] at p. 1. However, he never actually alleges any such claim. Thus, the Court sees no need to address state law at all.

*Conclusion*

For the reasons set forth above, MDPS's Motion to Dismiss [6] is GRANTED. Sumlar's claims against MDPS are dismissed *without prejudice*. Defendants' Motions for Summary Judgment [14, 16] are GRANTED IN PART AND DENIED IN PART. All official capacity claims against the Prentiss Sheriff's Department and Randy Tolar are dismissed *with prejudice*. All claims against Prentiss County are dismissed *without prejudice*.[11]

Sumlar shall have 14 days from today's date to file an amended complaint against the John Doe defendants. Should Sumlar fail to file an amended complaint on or before January 20, 2026, the Court will dismiss the case in its entirety without further notice.

SO ORDERED, this the 6th day of January, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE

---

[11] The Court dismisses these claims *without prejudice* since the dismissal is based on Sumlar's failure to adequately allege the claims, as opposed to on the merits.